FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 07, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CORY P., [1]<br><br>                              Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, [2]<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                              Defendant. | NO:  2:21-CV-00016-LRS<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 13, 14.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney Christopher H. Dellert.  Defendant is represented by Special Assistant United States Attorney Franco L. Becia.  The

---

[1] Plaintiff's last initial is used to protect his privacy.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  The Court therefore substitutes Kilolo Kijakazi as the Defendant and directs the Clerk to update the docket sheet.

ORDER - 1

Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 13, is denied and Defendant's Motion, ECF No. 14, is granted.

## JURISDICTION

Cory P. (Plaintiff) filed for disability insurance benefits on August 15, 2016, and for supplemental security income on August 17, 2016, alleging in both applications an onset date of February 1, 2015. Tr. 203-10. Benefits were denied initially, Tr. 125-33, and upon reconsideration, Tr. 136-49. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on June 13, 2018. Tr. 37-72. On September 14, 2018, the ALJ issued an unfavorable decision, Tr. 18-36, and on August 1, 2019, the Appeals Council denied review. Tr. 7-12. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1983 and was 34 years old at the time of the hearing. Tr. 43. He has a GED. Tr. 43. He last worked in 2015 loading trucks and stacking boxes. Tr. 43. He also has work experience in roofing and fencing, on an assembly line, and as a forklift driver. He was diagnosed with anxiety and panic disorder when he felt like he was having a heart attack and wanted to stay home and avoid people. Tr. 43-44. His symptoms included fuzziness in the head, chest pains, going

ORDER - 2

stiff and numb at the same time, and an overwhelming feeling of the need to stop what he was doing. Tr. 47. When he has a severe panic attack, it feels like "everything's closing in" and as though he cannot breathe. Tr. 48. He also has less severe panic attacks which involve the feeling of wanting to get outside and away from people. Tr. 49. Any time he has a panic attack he feels drained and fatigued. Tr. 52-53.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 3

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is

ORDER - 4

engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

ORDER - 5

1  404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the

2  analysis.

3      At step four, the Commissioner considers whether, in view of the claimant's

4  RFC, the claimant is capable of performing work that he or she has performed in the

5  past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the

6  claimant is capable of performing past relevant work, the Commissioner must find

7  that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the

8  claimant is incapable of performing such work, the analysis proceeds to step five.

9      At step five, the Commissioner should conclude whether, in view of the

10  claimant's RFC, the claimant is capable of performing other work in the national

11  economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this

12  determination, the Commissioner must also consider vocational factors such as the

13  claimant's age, education, and past work experience. 20 C.F.R. §§

14  404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other

15  work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

16  404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other

17  work, analysis concludes with a finding that the claimant is disabled and is therefore

18  entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

19      The claimant bears the burden of proof at steps one through four above.

20  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

21  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

  capable of performing other work; and (2) such work "exists in significant numbers

ORDER - 6

in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 1, 2015, the alleged onset date. Tr. 23. At step two, the ALJ found that Plaintiff has the following severe impairments: anxiety disorders (variously described as generalized anxiety disorder, panic disorder, and social phobia) and cannabis use disorder. Tr. 24. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24.

The ALJ then found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

> he can understand, remember, and carry out simple, as well as detailed tasks; he should not work with the public; he can work with a small group of co-workers and have superficial interactions with co-workers and supervisors, but should work independently and not on team or tandem tasks.

Tr. 26.

At step four, the ALJ found that Plaintiff is able to perform past relevant work. Tr. 30. Alternatively, at step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that existed in significant numbers in the national economy that Plaintiff can perform such as automobile

ORDER - 7

detailer, warehouse worker, and industrial cleaner.  Tr. 31.  Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from February 1, 2015, the alleged onset date, through the date of the decision.  Tr. 31.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  ECF No. 13.  Plaintiff raises the following issues for review:

1.  Whether the ALJ evaluated Plaintiff's symptom claims;

2.  Whether the ALJ properly considered lay witness testimony; and

3.  Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 13 at 2.

## DISCUSSION

**A.    Symptom Claims**

Plaintiff contends the ALJ improperly rejected his symptom claims.  ECF No. 12 at 11-20.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be

ORDER - 8

expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found that Plaintiff's symptoms did not appear to significantly interfere with functioning even at the earliest stages. Tr. 27. The ALJ observed that Plaintiff reported anxiety symptoms began about a year and a half before his alleged onset date and cited some findings from the first exam after his alleged onset date in March 2015. Tr. 27, 304-306, 308. Plaintiff argues the ALJ selectively cited the record and did not note that Plaintiff reported functioning was difficult, and that his provider observed that he was depressed and exhibited poor insight and judgment. ECF No. 13 at 7 (citing Tr. 303-04). Plaintiff is correct that the ALJ did not mention findings that Plaintiff presented as anxious and fearful, had obsessive thoughts, had poor insight, exhibited poor judgment, did not demonstrate appropriate mood or affect, and appeared depressed. Tr. 304. To the extent the ALJ minimized or overlooked these findings, the ALJ erred. However, this error is harmless because the ALJ gave additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

ORDER - 10

Second, the ALJ found that Plaintiff's symptoms improved quickly with treatment. Tr. 27. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). The ALJ noted that in April 2015, Plaintiff reported his anxiety symptoms were relieved with medication. Tr. 27, 294. The next day his primary care provider found he was "doing much better" on medication and on exam he denied anhedonia, was not anxious, was not in denial, denied hopelessness, reported no mood swings, and did not have pressured speech. Tr. 301. The ALJ also noted other signs of improvement in July 2015 when his therapist noted that Plaintiff had recently challenged himself by going to Seattle with his girlfriend and planning a trip to California for a wedding later that year. Tr. 27, 291. The ALJ that concluded such quick improvement with medication does not support disabling mental symptoms. Tr. 27.

Plaintiff argues the ALJ's analysis of his improvement with medication "focused on symptoms that he had not alleged" and that he never alleged constantly experiencing anxiety or panic attacks. ECF No. 13 at 8. Plaintiff's suggestion that his symptoms "waxed and waned" is not contradicted by the ALJ's findings nor

ORDER - 11

does it undermine the ALJ's conclusion that the record reflects Plaintiff's symptoms improved with treatment. "Symptoms may wax and wane during the progression of a mental disorder. Those symptoms, however, may also subside during treatment. . . . Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill,* 878 F.3d 867, 876 (9th Cir. 2017) (citing *Garrison*, 759 F.3d at 1017). This is a clear and convincing reason supported by substantial evidence.

Third, the ALJ found that Plaintiff's complaints were largely situational. Tr. 27. If a claimant suffers from limitations that are transient and result from situational stressors, as opposed to resulting from a medical impairment, an ALJ may properly consider this fact in discounting Plaintiff's symptom claims. *See Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016) (concluding symptom testimony properly rejected in part because "the record support[ed] the ALJ's conclusion that [plaintiff's] mental health symptoms were situational").[3] The ALJ

---

[3] *See also Kimberlee L. v. Comm'r of Soc. Sec. Admin.*, No. 2:18-CV-00236-MKD, 2019 WL 2251824, at *9 (E.D. Wash. May 9, 2019), *report and recommendation adopted sub nom. Kimberlee Anne L. v. Comm'r of Soc. Sec. Admin.*, No. 2:18-CV-236-RMP, 2019 WL 2250279 (E.D. Wash. May 24, 2019); *Brendan J. G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-CV-742-SI, 2018 WL 3090200, at *7 (D. Or. June 20, 2018); *Rys v. Berryhill*, No. CV 16-8391-JPR, 2018 WL 507207, at *15 (C.D. Cal. Jan. 19, 2018); *Menchaca v. Comm'r, of Soc. Sec. Admin.*, No. 6:15–cv–

ORDER - 12

noted that throughout 2015, Plaintiff's complaints about symptoms related to things like aggravating neighbors and financial worries.  Tr. 27, 289-90, 306; *see also* Tr. 297, 378-79.  For example, one record cited by the ALJ indicates, "He states he has been having more panic attacks since last session; he was angry about neighbors and has been feeling better since they finally moved and panic attacks stopped." Tr. 289. The AL reasonably concluded that mental symptoms related to such situational complaints are not disabling.

Plaintiff appears to argue that the ALJ's analysis of situational stressors ignores the baseline level of Plaintiff's anxiety that was reduced by not working and staying home.  ECF No. 13 at 8.  However, the ALJ did not find that Plaintiff has no anxiety, only that the severity of the symptoms alleged is not supported by the record.  Tr. 27.  The ALJ found anxiety disorder is a severe impairment and included nonexertional limitations in the RFC finding to account for Plaintiff's mental health symptoms.  Tr. 24, 26.  The ALJ's analysis of situational stressors takes into account evidence in the medical record which is not contradicted by Plaintiff's argument. This is a clear and convincing reasons supported by substantial evidence.

---

01470–HZ, 2016 WL 8677320, at *7 (D. Or. Oct. 7, 2016); *Oraivej v. Colvin*, No. C15-630-JPD, 2015 WL 10713977, at *6 (W.D. Wash. Oct. 5, 2015); *Wright v. Colvin*, No. 13-CV-3068-TOR, 2014 WL 3729142, at *5 (E.D. Wash. July 25, 2014); *but see Bryant v. Astrue*, No. C12-5040-RSM-JPD, 2012 WL 5293018, at *5–7 (W.D. Wash. Sept. 24, 2012).

ORDER - 13

Fourth, the ALJ found there was a long gap in treatment and that Plaintiff's symptoms remained stable during that time. Tr. 27. Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ observed there is a long gap in treatment from September 2015 to November 2016 when Plaintiff finally returned to follow up with behavioral medicine. Tr. 27; *compare* Tr. 346 (upper GI endoscopy follow up October 2015) to Tr. 402 (behavioral health follow up November 2016). The ALJ noted that it appeared Plaintiff remained stable during that time, Tr. 402, and there is no evidence that Plaintiff's symptoms exacerbated during that time such as emergency or inpatient treatment. Tr. 27. Additionally, the ALJ noted that in November 2016, Plaintiff reported his primary barrier to work is "people" because he has a hard time being around others. Tr. 355. The ALJ observed that the RFC finding accommodates this barrier by limiting social interaction. Tr. 26-27.

Plaintiff first argues the ALJ had a duty to inquire about the gap in treatment at the hearing under Social Security Ruling 16-3p, and that the ALJ did not "acknowledge the contemporaneous information about why Plaintiff had a gap in his treatment." ECF No. 13 at 9. It is not clear why the ALJ would have a duty to inquire about the gap which Plaintiff asserts is explained in the treatment record. Furthermore, SSR 16-30 provides that the ALJ "may" need to inquire about a lack of

ORDER - 14

treatment; here, the ALJ reasonably considered the record overall and accounted for Plaintiff's social anxiety in the RFC, so no inquiry was required.

Plaintiff next argues the ALJ failed to consider that the gap in treatment was explained by his statements that he had been sick, worsening of anxiety symptoms, and four months of convincing himself to return to treatment. ECF No. 13 at 9-10 (citing Tr. 402). According to Plaintiff, the record as a whole demonstrates the gap in treatment was due to anxiety. ECF No. 13 at 10. To the contrary, Plaintiff's citation to one record does not demonstrate that "as a whole" the record supports the conclusion that the gap in treatment was the result of his anxiety. The ALJ considered the context of the gap in treatment and reasonably concluded the RFC finding accommodates the social anxiety supported by the record. Furthermore, to the extent the record as a whole could be seen to conflict or be ambiguous on this issue, it is the ALJ's duty to resolve the ambiguity. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). This is a clear and convincing reason supported by substantial evidence.

Fifth, the ALJ found there was noncompliance with treatment recommendations regarding marijuana use. Tr. 28. It is well-established that unexplained non-compliance with treatment reflects on a claimant's credibility. *See Molina*, 674 F.3d at 1113-14; *Tommasetti*, 533 F.3d at 1039; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). The ALJ observed that Plaintiff continued to use marijuana despite the advice of treating providers to reduce or

ORDER - 15

eliminate marijuana usage.  Tr. 28.  In 2014, his treating physician "[e]ncouraged him to cut back and stop his marijuana use if possible since any substance abuse can cloud the diagnosis of psych issues.  The withdrawal from marijuana may lead to increased anxiety for a period of time but the marijuana itself can contribute to anxiety and paranoid thoughts." Tr. 311.  Notwithstanding the advice of his doctor, in April 2015 he was still using marijuana, Tr. 294, and in September 2015 he stated he would continue using marijuana, Tr. 378.  On October 1, 2015, he indicated he had been off marijuana for about three weeks and his physician recommended he remain off of it "to avoid clouding his clinical picture." Tr. 297.  However, in November 2016 he reported that while he had cut back on his cannabis use but was still using "two or three times weekly for treatment of anxiety." Tr. 354.  Seven days later, he told a different provider that he "has essentially stopped using marijuana" because he could not afford it.  Tr. 402.  In 2018, he indicated that he had been smoking marijuana regularly, he was decreasing his cannabis use, and that he "is aware that using marijuana decreases his motivation as he gets high and does not want to do anything." Tr. 413.  The ALJ's finding that Plaintiff continued to use marijuana against the advice of his providers is supported by substantial evidence.

Plaintiff argues he initially used marijuana to help with his anxiety symptoms while waiting for a diagnosis and that he tried to stop using but went back to marijuana in order to control his symptoms.  ECF No. 13 at 11-12 (citing Tr. 297, 303, 320, 335, 401-02).  Plaintiff's subjective belief that marijuana helped his symptoms is insufficient in light of the recommendations of his medical providers

ORDER - 16

documented in the record.  This is a clear and convincing reason supported by substantial evidence.

**B.    Lay Witness**

Plaintiff contends the ALJ gave insufficient reasons for giving little weight to the statements from his girlfriend, Alissa B.  ECF No. 13 at 12.  Ms. B. testified that Plaintiff's main problem is anxiety and described his panic attacks.  Tr. 26.  She indicated that panic attacks last from one to two hours and Plaintiff is drained for several hours afterward.  Tr. 26.  He also has "mini panic attacks" every couple of days.  Tr. 26-27.  She testified that Plaintiff's worst period was from November 2014 to April 2015 as he was not able to leave the house for several months.  Tr. 27. She has observed that social situations and pressure trigger panic attacks.  Tr. 28. Medication and counseling have been helpful.  Tr. 28.  She testified that she did not believe he could be consistent at work due to his panic attacks.  Tr. 28-29.

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ.  If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'"  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

The ALJ found that Ms. B.'s function report confirmed many of Plaintiff's reports regarding daily activities and therefore gave it some weight as it verified the

ORDER - 17

1  "paragraph B" ratings at step three.  Tr. 25, 30, 251-58.  However, the ALJ gave

2  limited weight to Ms. B.'s other observations.  Tr. 29.

3      First, the ALJ noted that although Plaintiff was found to be anxious at

4  appointments, no panic attacks were ever medically observed or verified.  Tr. 29.

5  Sometimes a lack of support from medical records is not a germane reason to give

6  little weight to lay witness observations.  *Diedrich v. Berryhill*, 874 F.3d 634, 640

7  (9th Cir. 2017); *see also see also Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir.

8  2009).  "The fact that lay testimony and third-party function reports may offer a

9  different perspective than medical records alone is precisely why such evidence is

10  valuable at a hearing."  *Id.*; *see also Smolen*, 80 F.3d at 1289.  While it may be true

11  that no provider observed a panic attack, this is not a sufficient reason for rejecting

12  Plaintiff's girlfriend's testimony.  Panic attacks are episodic, and it was

13  unreasonable for the ALJ to find that the statements of Ms. B. are unreliable because

14  Plaintiff never happened to have a panic attack during an appointment.

15      Second, the ALJ gave little weight to Ms. B.'s opinion that Plaintiff is unable

16  to work because she is not a vocational expert.  Tr. 30.  The ALJ noted that Ms. B.

17  indicated that Plaintiff could not work because "most jobs involve customer service

18  and he is unable to do that due to his disorder."  Tr. 258.  To the extent Ms. B.

19  testified or commented about vocational characteristics of jobs, the ALJ was correct

20  to disregard the statements.  The RFC finding includes a limitation of no work with

21  the public, consistent with the lay witness statement that Plaintiff could not do

customer service, and the vocational expert testified that there are jobs available in

ORDER - 18

significant numbers in the national economy consistent with the RFC.  Tr. 26, 30-31.
The ALJ's finding is supported by substantial evidence and is germane to the
testimony.

Third, the ALJ noted Ms. B. testified that medication helped Plaintiff's
symptoms, which is one of the clear and convincing reasons given by the ALJ for
findings the extent of Plaintiff's symptom claims less than fully reliable.  Tr. 27, 29.
When lay witnesses' statements are similar to Plaintiff's testimony, the ALJ's valid
reasons to discount Plaintiff's allegations apply with equal force to the lay
statements.  *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 694 (9th
Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting
[the claimant's] own subjective complaints, and because [the lay witness's]
testimony was similar to such complaints, it follows that the ALJ also gave germane
reasons for rejecting [the lay witness's] testimony").  Thus, the ALJ's assessment of
the Ms. B.'s testimony does not provide a basis for reversing the decision.

## C.    Medical Opinion

Plaintiff contends the ALJ failed to properly consider the opinion of Dominika
Breedlove, Psy.D.  ECF No. 13 at 15-19.  In August 2017, Dr. Breedlove completed
a Mental Source Statement form and assessed marked limitations in the ability to
perform activities within in a schedule and maintain regular attendance; the ability to
work in coordination with or proximity to others without being distracted by them;
the ability to complete a normal workday and workweek without interruptions from
psychological symptoms and to perform at a consistent pace; the ability to accept

ORDER - 19

instructions and criticism from supervisors; the ability to get along with co-workers; and the ability to respond appropriately to changes in the work setting.  Tr. 404-06. Dr. Breedlove also assessed marked limitations in the "B criteria" regarding difficulties in maintaining social function and difficulties maintaining concentration, persistence, and pace.  Tr. 406.  Dr. Breedlove opined that Plaintiff would be off-task 30 percent of the time and would miss four or more days of work per month. Tr. 406.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)."  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by

ORDER - 20

1   clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228

2   (internal quotation marks and brackets omitted).  "If a treating or examining doctor's

3   opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

4   providing specific and legitimate reasons that are supported by substantial

5   evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

6          The ALJ gave less weight to Dr. Breedlove's opinion than to the opinions of

7   the state agency psychological consultants, Kent Reade, Ph.D., and Dan Donahue,

8   Ph.D., and to examining psychologist, Thomas Rowe, Ph.D.  Tr. 28-29, 81-83, 107-

9   08, 352-60.  The ALJ gave weight to most of Dr. Breedlove's findings of none to

10  moderate limitations on numerous work-related activities, which the ALJ found is

11  consistent with Plaintiff's overall stability and lack of inpatient treatment, his ability

12  to maintain a long-term relationship, his ability to complete activities of daily living,

13  and his ability to produce artwork and focus on it for hours at a time.  Tr. 29 (citing

14  findings at Tr. 25).

15         As to the assessment of marked limitations, the ALJ first found Dr.

16  Breedlove's opinion is inconsistent with Plaintiff's demonstrated abilities.  Tr. 29.

17  Factors relevant to evaluating any medical opinion include the amount of relevant

18  evidence that supports the opinion, the quality of the explanation provided in the

19  opinion, and the consistency of the medical opinion with the record as a whole.  20

20  C.F.R. §§ 404.1527(c), 416.927(c); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th

21  Cir. 2007); *Orn*, 495 F.3d at 631.  The ALJ observed that the marked ratings in the

ability to get along with others and maintaining social functioning are inconsistent

with Plaintiff's ability to live with his long-term girlfriend, take his art to art shows or art cafes, and to do errands in public places. Tr. 29, 243-58, 354-55. Similarly, the ALJ found the marked rating in concentration, persistence, and pace is inconsistent with findings of good conversational attention and concentration by Dr. Rowe, whose findings were given great weight by the ALJ. Tr. 29-30, 355.

Plaintiff argues the ALJ made an "apples to oranges" comparison, that the activities cited were not relevant to the limitations Dr. Breedlove assessed, and that the ALJ failed to acknowledge that Plaintiff's ability to perform these activities was qualified by Plaintiff. ECF No. 13 at 17-18. Activities involving social and public interaction are relevant to social limitations, and findings and activities involving attention and concentration are clearly related to limitations on concentration, persistence, and pace. *See* Tr. 25, 29. The ALJ acknowledged Plaintiff's qualifiers regarding social limitations and included a limitation in the RFC finding of no work with the public, but found very little documentation of difficulty involving concentration, persistence, or pace. Tr. 25. These findings are supported by substantial evidence, and this is a specific, legitimate reason for giving less weight to Dr. Breedlove's opinion.

The ALJ also found that the assessment does not discuss whether or if Dr. Breedlove considered the impact of the long gap in treatment, the fact that Plaintiff was not taking medication at the time of the assessment, or Plaintiff's ongoing marijuana use. Tr. 29. Plaintiff cites *Thomas*, 278 F.3d at 958, quoting 20 C.F.R. § 416.929(e), and argues the ALJ had an affirmative duty to recontact Dr. Breedlove

to resolve any ambiguity.  ECF No. 13 at 18.  However, 20 C.F.R. § 416.929 was revised after *Thomas*, a 2002 case, and the version of the regulation in effect at the relevant time no longer includes a provision requiring an ALJ to recontact a treating provider.  20 C.F.R. § 416.929 (April 20, 2015 to March 26, 2017).  Furthermore, the relevance of each of these factors was previously discussed by the ALJ and was reasonably considered in evaluating Dr. Breedlove's opinion.  This is a specific, legitimate reason supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 14, is GRANTED.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** December 7, 2021.

_____

LONNY R. SUKO
Senior United States District Judge

ORDER - 23